UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| In re CC HOLDINGS 2000 LLC,<br>    *Debtor*.<br>_____<br>CC HOLDINGS 2000 LCC,<br>    *Appellant*,<br><br>v.<br><br>D. WASHBURN INVESTMENTS, LLC,<br>    *Appellee*. | Civil No. 3:18cv2139 (JBA)<br><br>March 24, 2020 |

**ORDER DISMISSING APPELLANT'S APPEAL**

Debtor-Appellant CC Holdings 2000 LLC appeals from the ruling of the Bankruptcy Court granting Movant-Appellee D. Washburn Investments, LLC's motion to compel the Trustee to abandon certain real property of the bankruptcy estate. (Not. of Appeal [Doc. # 1].) Appellee opposes. For the reasons that follow, the ruling of the Bankruptcy Court is affirmed.

**I. Background**

The Court assumes the parties' familiarity with the background of this case. Briefly, Debtor-Appellant CC Holdings 2000 LLC ("CC Holdings") filed a voluntary Chapter 11 petition on August 16, 2017, which was converted to a Chapter 7 proceeding on October 19, 2017. The United States Trustee appointed Kara Rescia to serve as the Chapter 7 Trustee ("the Trustee") in this matter.

Movant-Appellee D. Washburn Investments, LLC ("D. Washburn") moved the Bankruptcy Court to compel the Trustee to abandon certain real property of the estate located at 2322 Bayshore Road, Nokomis, Florida 34275 ("the Property"). (Mot. to Compel, *In re CC Holdings 2000 LLC*, No. 17-31253(AMN), ECF No. 117 (Bankr. D. Conn. Sep. 13, 2018).) In August 2017, Appellee D. Washburn had obtained a mortgage foreclosure judgment in its favor as to that property in the Twelfth Judicial Circuit Court in Florida ("the

Florida judgment" or "the judgment of foreclosure"). (Order Granting Mot. to Compel [Doc. # 1-1] at 1.)

The Bankruptcy Court held a hearing on D. Washburn's motion, at which the Trustee "stated that she spent a significant amount of time investigating the Property, including conducting a market analysis and investigating potential claims the Debtor allegedly had against Movant [D. Washburn]" and "conversations with Debtor's state court foreclosure counsel Mr. Early." (*Id.* at 1-2.) "The Trustee concluded that, in her business judgment, the Property and potential claims against Movant offered no value to the Debtor's estate." (*Id.* at 2.) The Bankruptcy Court granted D. Washburn's motion to compel over CC Holdings' objection and ordered the Property abandoned by the Trustee pursuant to 11 U.S.C. § 554(b). (*Id.* at 3.)

**II. Discussion**

Debtor-Appellant CC Holdings argues that the Bankruptcy Court erred in granting Movant-Appellee D. Washburn's motion to compel the Trustee to abandon the Property. It contends that the Bankruptcy Court's decision "flies in the face of the facts" and suggests that decision miscalculated the value of and cost of administering the Property. (Appellant's Br. [Doc. # 12] at 2.)

**A. Standard of Review**

Generally, a "district court reviews the bankruptcy court's conclusions of law *de novo* and its findings of fact under a clearly erroneous standard." *In re Beaudoin*, 388 B.R. 6, 9 (D. Conn. 2008) (internal quotation omitted). But a "court order to abandon or not to abandon property is reviewed on an abuse of discretion standard, unless it is based upon a clearly erroneous finding of fact." 5 Collier on Bankruptcy ¶ 554.02[4]. "A finding is clearly erroneous when . . . the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re Beaudoin*, 388 B.R. at 9 (internal quotations omitted).

### B. Abandonment of the Property

"After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value to the estate." 11 U.S.C. § 554(a). Where a request for abandonment is opposed, "the party requesting abandonment has the burden of proof." 5 Collier on Bankruptcy ¶ 554.02[4]. But the "party opposing the request that property be abandoned must show some likely benefit to the estate; mere speculation about possible scenarios in which there might be a benefit is not sufficient." *Id.* "Abandonment should not be ordered where the benefit of administering the asset exceeds the cost of doing so." *In re K.C. Machine & Tool Co.*, 816 F.2d 238, 246 (6th Cir. 1987).

In granting the motion to compel abandonment, the Bankruptcy Court found that "the Trustee conducted a good faith and thorough investigation of the Property and the potential claims against [D. Washburn]" and "concluded that the risks and expenses outweighed the probability of recovery, and that the Property was burdensome to the estate." (Order Granting Mot. to Compel at 3.) The Bankruptcy Court found that "Mr. Early and [CC Holdings]," who bore "the burden to show that the Property could provide any benefit to the estate," had "failed to present any argument or evidence sufficient to demonstrate that a recovery would be possible." (*Id.*)

Appellant CC Holdings now argues that this conclusion was in error because "[i]t is well documented that the cost of administering this asset to the estate was zero" and thus "even if the asset's value were zero, the trial court had no basis for abandoning it." (Appellant's Br. at 2.) Appellant argues that there is "[n]o cost . . . to the estate" from the administration of the Property because "John T. Early, III resides at the property and pays all utilities and expenses." (*Id.* at 3.) Therefore, Appellant argues, "there are compelling and intriguing reasons for simply letting [the Property] lie while the judicial system works." (*Id.* at 3.)

3

As to the value of the Property to the estate, Appellant contends that the Property's "value (in a very active and appreciating Florida real estate market) is a minimum of $600,000 upwards to $1,000,000 when certain value added features (such as direct waterfront access, with dockage) can be brought to the asset at no cost to the asset by John T. Early, III." (*Id.*) But the real estate value of the Property benefits the estate only if the Property is not encumbered by the mortgage foreclosure judgment, *i.e.*, if that judgment is invalid as Appellant argues.

According to Appellant, Appellee D. Washburn's claim of "a mortgage and judgment in excess of $1,200,000 . . . is a chimera at best" because it "originates from a capital investment of $300,000 of an underhanded and dubious nature." (*Id.*) Appellant argues that D. Washburn "engaged in actionable conduct, having interfered with the contractual rights of John T. Early, III, who possessed a written agreement to buy [the mortgage and note] in settlement of legal claims for $400,000." (*Id.*) It represents that D. Washburn obtained the note (and subsequent judgment of foreclosure) "as the fruit of insider dealing with Busey Bank NA," which previously held the note. (*Id.*) Thus, Appellant argues, the judgment of foreclosure "is a chimera, for it will not stand up to the test of appeal" because the "Florida State Trial Court erred egregiously" in issuing that judgment, "rendering a decision which directly contradicted precedent." (*Id.* at 4.)

Because the Florida court which issued the judgment of foreclosure "violat[ed] . . . binding precedent," Appellant CC Holdings explains, the expectation of a judgment in its favor on appeal of that judgment is more than "mere speculation." (*Id.*) Rather, Appellant's counsel represents that he is "intimately familiar with all aspects of the case" and that it is a "98% certainty that [CC Holdings] will prevail" in its appeal of that judgment. (*Id.* at 6.) Thus, according to Appellant, the foreclosure will not stand, and the value of the Property to the estate will outweigh the non-existent costs to the estate of continuing to administer the Property. (*Id.*) Appellant also argues that D. Washburn "has engaged in unfair trade

4

practices" and that "[u]nder [the Connecticut Unfair Trade Practices Act ("CUTPA")], damages trebled, [any judgment] could be severe," further adding to the potential value of the Property. (*Id.*) Additionally, John T. Early, III "will conduct his representation" of the Property in connection with these proceedings "pro bono," and thus "the estate is not burdened by one dime of administrative costs." (*Id.*) Appellant argues that because the Property imposes no costs on the estate and will have significant value pending the favorable resolution of the existing and potential litigation involving the Property and D. Washburn, the Bankruptcy Court erred in determining that abandonment was proper.

In response, Appellee D. Washburn references certain Schedules filed by CC Holdings in the Bankruptcy Court which list "the market value of [the Property] at $850,000" and D. Washburn's claim against the Property "in the amount of $908,504.00." (Appellee's Br. [Doc. # 18] at 2.) Because this is already a "negative equity position" which has also "clearly been increased by the continuing accrual of interest on the underlying obligation," Appellee argues, the Property clearly does not add value to the estate. Moreover, according to Appellee, "[e]ven the filings of Mr. Early confirm that there is not even a hint of equity in the mortgage premises that would be available to satisfy the claims of creditors of the estate." (*Id.*) Appellee also notes that the Trustee "would have had an obligation to pursue recovery against the Florida real estate if it would have provided a benefit to the estate." (*Id.*)

Separately, Appellee argues that the order of abandonment "does not in and of itself equate to any direct economic benefit to" it, but rather "merely permits [D. Washburn] to pursue the remedies available to a Mortgage holder upon default." (*Id.* at 3.) Those remedies, Appellee explains, will "involve a foreclosure proceeding . . . in the courts of the State of Florida" during which "Mr. Early can raise any of his alleged arguments as to the validity of the mortgage, etc." (*Id.*)

This Court must determine whether the factual determination of the Bankruptcy Court, which credited the Trustee's conclusion that the Property offered no value to CC

Holdings' estate, was clearly erroneous. On that issue, Appellant CC Holdings focuses its arguments almost exclusively on its attempt to demonstrate that the judgment of foreclosure will not stand. Despite Appellant's view that it is a "98% certainty" that the foreclosure will be overturned, the Court cannot rely on that view to conclude that it was clear error to determine that the Property added no value to the estate. Appellant disagrees vehemently with the conclusion reached by the Florida court, but the evident strength of its conviction is insufficient to demonstrate more than "mere speculation about possible scenarios in which there might be a benefit." 5 Collier on Bankruptcy ¶ 554.02[4]. Thus, on the record before the Court, it would be mere speculation to conclude that the judgment of foreclosure will not stand on appeal or that potential CUTPA claims would produce a valuable judgment, and Appellant has not demonstrated that the possible value of the Property stemming from any foreclosure appeal or CUTPA litigation should weigh against abandonment. *See id.*

Moreover, the Trustee represented that she "conduct[ed] a market analysis and investigat[ed] potential claims" against Appellee D. Washburn, including through conversations with Mr. Early. (Order Granting Mot. to Compel at 1-2.) Appellant has made no argument which would lead the Court to conclude that the Bankruptcy Court abused its discretion in deciding to credit the Trustee's analysis of the value of those potential claims. Nor has Appellant demonstrated that it was an abuse of discretion to determine that the Property's value, if any, is outweighed by its costs, especially in light of the estimated sale value of the Property and the value of D. Washburn's judgment, despite Mr. Early's offer of "pro bono" legal representation and ongoing payment of utilities and expenses.

### III. Conclusion

Appellant CC Holdings 2000 LLC has demonstrated neither that the order of the Bankruptcy Court was based on any clear error of fact, nor that the Bankruptcy Court abused its discretion in authorizing the Trustee to abandon the Property. For the foregoing reasons, Appellant's appeal is dismissed, and the Order Granting the Motion to Compel the Trustee to Abandon the Property is affirmed.

                                            IT IS SO ORDERED.

                                            /s/_____
                                            Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 24th day of March 2020.